CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

JUN 21 2010

JOHN F. CORCORAN, CLERK
BY: /s/ Y. Cluff
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Action No. 7:08CR00043 |
| ) | Civil Action No. 7:10CV80222 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| ) | |
| RONDALL CLYDE MIXSON, ) | By: Hon. Glen E. Conrad |
| ) | United States District Judge |
| Defendant. ) | |

Rondall Clyde Mixson, a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss to which Mixson has responded, making the matter ripe for the court's disposition. For the reasons that follow, the government's motion to dismiss will be granted and Mixson's motion to vacate will be denied.

## Background

On October 2, 2008, Mixson was charged in a one-count indictment returned by a grand jury in the Western District of Virginia. Count One alleged that, at some time between the summer of 2007 and January 1, 2008, the defendant knowingly possessed a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e).

On March 20, 2009, Mixson entered a plea of guilty to Count One of the indictment, pursuant to a written plea agreement. By signing the agreement, Mixson acknowledged that if the court determined that he had at least three prior convictions for serious drug offenses and/or violent felonies, he would face a mandatory minimum term of imprisonment of fifteen years, pursuant to 18 U.S.C. § 924(e), and that, in the absence of such finding, he would be subject to a

ten-year maximum term of imprisonment. Additionally, Mixson certified that he was pleading guilty because he was, in fact, guilty of the offense charged; that no one had made any promises as to what the final disposition of the case would be; that he had discussed the plea agreement and all other matters pertaining to the indictment with his attorney; and that he was fully satisfied with his attorney and the advice provided by her. Under the terms of the plea agreement, the defendant agreed to waive his right to file a direct appeal "on any ground." (Plea Ag. at 6). The defendant also agreed to "waive any right [he] may have to collaterally attack, in any future proceeding, any order issued in this matter . . . ." (Plea Ag. at 11).

During the plea hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the court established that Mixson possessed the capacity to make a voluntary, intelligent, and informed plea. In response to questions from the court, Mixson stated under oath that he had graduated from high school, that he was not suffering from a physical or mental problem that would impair his ability to understand or participate fully in the proceeding, and that he was not under the influence of any drugs or intoxicants that would affect his reasoning, comprehension, or communication skills. (Plea Hearing Tr. at 5-6). The court also established that Mixson understood the charge to which he was pleading guilty, as well as the purpose of the Rule 11 proceeding. (Tr. at 6-7).

The court instructed the prosecutor to review the salient portions of the plea agreement that Mixson had reached with the government. In response, the prosecutor outlined several sections of the plea agreement, including section (A)(1), which outlined the potential penalties that Mixson faced upon conviction. The prosecutor also summarized sections (C)(1) and (2) of the plea agreement. He explained that, pursuant to those sections, the defendant would be

waiving his "right to appeal this case," and that he would be waiving his "right to collaterally attack [his] conviction . . . ." (Tr. at 8). Upon being asked if the prosecutor's summary of the plea agreement was consistent with his own understanding of the agreement, Mixson responded in the affirmative. (Tr. at 11).

The court then inquired as to whether Mixson was voluntarily pleading guilty. In response to questions from the court, Mixson affirmed that no one had made any promises or representations regarding the disposition of the case other than those set forth in the plea agreement, that no one had attempted to coerce or force him to plead guilty, and that he was "considering a plea of guilty based on what [he thought was] best for [him] and what [was] consistent with the facts that underlie this prosecution." (Tr. at 11-12).

The court also questioned Mixson regarding his understanding of the advisory sentencing guidelines and the potential application of 18 U.S.C. § 924(e). Mixson acknowledged that it would be necessary to determine whether he had at least three prior convictions for violent felonies or serious drug offenses, and that if he qualified as an armed career criminal under § 924(e), he would be subject to a mandatory minimum period of incarceration of fifteen years. (Tr. at 15). Mixson further acknowledged that he had "no reason to believe [he would] receive any particular sentence if [he did] plead guilty pursuant to [the] agreement." (Tr. at 17).

The court subsequently reviewed the constitutional rights that Mixson would waive if he entered a plea of guilty. In response to questions from the court, Mixson stated that he understood that "if [he pled] not guilty, [he] would have the right to a trial by a jury and a unanimous jury verdict of guilt beyond a reasonable doubt before [he] could be punished," and that if he entered a plea of guilty, he "would waive the right to a trial by a jury and a unanimous

3

jury verdict of guilt beyond a reasonable doubt." (Tr. at 21). Mixson also affirmed that he understood that if he proceeded to trial, he would have the right to confront and cross-examine adverse witnesses, the right to compel the attendance of witnesses who might be favorable to him, and the right to remain silent. Notwithstanding all of the valuable constitutional rights that he would waive by pleading guilty, and the possibility that he might qualify as an armed career criminal under 18 U.S.C. § 924(e), Mixson stated that he still wished to enter a plea of guilty.

The court asked Mixson to explain, in his own words, what he had done that made him believe that he was guilty of the firearm offense with which he was charged. In response, Mixson testified that he "had a firearm after being a convicted felon," and that he possessed the firearm in Virginia. (Tr. at 27).

The court then called upon the prosecutor to present any evidence that would support Mixson's plea of guilty. Proceeding by proffer, the prosecutor summarized the government's evidence as follows:

> Your honor, the evidence in this case is pertaining to a Mossberg Model 500 pump-action pistol-grip shotgun that was recovered by the authorities on or about the 11th day of April, 2008.
>
> This gun was recovered, and . . . it was examined on or about the 1st of July, 2008, by a firearms interstate expert . . . who . . . has issued an opinion that this gun was not manufactured in Virginia, in fact, was manufactured outside of Virginia, and it has traveled in interstate commerce.
>
> The gun was also test-fired by Detective David Flynn, a detective with Roanoke County Police Department, and determined to be an operable firearm.
>
> During all times in question here, which would span the period from the summer of 2007 until on or about the end of January 1st, 2008, . . . this defendant was in fact a convicted felon . . . .

4

Going to the sequence of events that led to this charge, on January the 22nd, 2006, an individual by the name of James Robert Nabers legally purchased this Mossberg firearm from a firearms dealer in Richmond, Virginia. He lived in the Grandin Road area of the City of Roanoke, and he resided with an individual there by the name of Ashley Valentine, who is the brother of the defendant here today.

At some time in the summer of 2007, he noticed that the firearm was missing from its customary place, which was . . . under his bed. He was unaware of exactly when the gun had disappeared.

Mr. Nabers indicated in the investigation that he questioned his roommate, Ashley Valentine, about that, and Mr. Valentine advised him that he had given the gun to his brother, Bubba, which is a street nickname or a nickname for the defendant here today.

As part of the investigation, Mr. Valentine was interviewed and in fact gave sworn testimony before the grand jury that he in fact had taken the firearm from James Roberts Nabers and had in fact given it to his brother.

Also as a part of this investigation, a many-time convicted felon and kind of a running mate of this defendant, by the name of Melvin Pruitt – Mr. Pruitt has since died while in custody because of cancer – but he gave a statement and also gave sworn testimony before the grand jury that he spent a lot of time with this defendant during the months in question, and he had seen this defendant in possession of that Mossberg pistol-grip shotgun on at least 50 occasions and in fact had seen him fire the gun.

Mr. Pruitt testified under oath that this defendant had given him an explanation as to why he was carrying a gun at that time, having to do with that he had taken a quantity of roughly 100 pounds of marijuana that was advanced to him by some unidentified Mexicans and he had never paid for that marijuana, and he felt somewhat in danger because of that, and also that he felt there was a bounty on his head for having defrauded the marijuana dealers.

. . . [O]n the 11th day of April, 2008, [the police] recovered the gun in question from [William Junior Underwood, who resides on Starkey Road in Roanoke County].

Mr. Underwood said he had gotten the gun from this defendant, [and] that the defendant had asked him to keep the gun for him, as he,

5

> given his record, did not need to be caught out on the roads running
> around with this firearm.
>
> Finally, after his arrest . . . the defendant had written a letter to his
> girlfriend at that time, Donna Dodson. That letter was intercepted by the
> authorities, or recovered by the authorities. And in that letter, this
> defendant tells his girlfriend that, "The cops got the gun I got from Ashley
> and that I gave to Junior Underwood," again referring to the person from
> whom the gun was recovered.

(Tr. at 27-30).

The court subsequently questioned whether Mixson agreed with the evidence summarized by the prosecutor. In response, Mixson stated that he agreed with "[e]verything except for the firing of the shotgun." (Tr. at 31). Although Mixson asserted that he never fired the weapon, he acknowledged that he "possessed it," and that the possession was "over a period of time." (Tr. at 31).

At the conclusion of the hearing, the court specifically inquired as to whether Mixson was satisfied with his attorney's representation, and as to whether he had any questions regarding anything that had been said during the hearing. Mixson indicated that he was satisfied with the services provided by his attorney, and that he did not have any questions for the court. (Tr. at 33).

Mixson's sentencing hearing was scheduled for June 16, 2009. Prior to the hearing, a probation officer prepared a presentence investigation report (PSR). In the PSR, the probation officer determined that Mixson qualified for sentencing as an armed career criminal pursuant to 18 U.S.C. § 924(e) and United States Sentencing Guidelines Manual (USSG) § 4B1.4. Mixson's status as an armed career criminal resulted in a base offense level of 33 under the advisory sentencing guidelines. The probation officer then subtracted three levels for acceptance of

responsibility under USSG § 3E1.1, which resulted in a total offense level of 30. When coupled with a criminal history category of V, Mixson's total offense level yielded an advisory guideline range of imprisonment of 180 to 188 months.[1]

On June 1, 2009, two weeks before the scheduled sentencing hearing, Mixson filed a pro se motion to withdraw his guilty plea. In the motion, Mixson alleged that he had been misled by his attorney, and that he would provide a more detailed explanation when he appeared in court.

The court conducted Mixson's sentencing hearing on June 16, 2009. At the beginning of the hearing, the court addressed the defendant's pro se motion to withdraw his guilty plea. When asked to explain the basis for the motion, Mixson stated that "[o]nce [he] got access to the law library, . . . [he determined he could] stand a better chance for a jury trial than just accepting 15 to life by pleading guilty." (Sentencing Tr. at 3). Mixson further asserted that he "believe[d] with the jury trial that [he could] actually beat the indictment," since he "never shot that gun" and none of his fingerprints were found on it. (Tr. at 4-5). After considering Mixson's arguments and those made by the government, the court denied the motion to withdraw. The court emphasized that it had conducted the Rule 11 hearing in the defendant's case, and that it was clear from the hearing that Mixson's plea of guilty was knowing and voluntary and that Mixson understood the potential consequences that would apply if he qualified for sentencing as an armed career criminal. The court also noted that Mixson had admitted, during the Rule 11 hearing, the necessary elements for a finding and determination of guilt, and that his pro se motion appeared to be based primarily on sentencing concerns. Following the denial of the

---

[1] The low end of the advisory guideline range was the mandatory minimum sentence required by 18 U.S.C. § 924(e).

7

defendant's pro se motion, the court inquired as to whether Mixson wished to proceed to sentencing with his appointed counsel. Mixson responded in the affirmative.

During the sentencing hearing, the court noted for the record that the prior felony convictions that gave rise to the application of the armed career criminal enhancement were contained in paragraphs 21, 22, 23, 27, 28, 29, 30, 31, 38, and 39 of the PSR.[2] In response to questions from the court, Mixson affirmed that the list of convictions was true and accurate, and that each of the underlying offenses qualified as a violent felony or serious drug offense for purposes of § 924(e). (Tr. at 18-19). Consequently, the court found that Mixson qualified as an armed career criminal and sentenced him to the mandatory minimum term of imprisonment of 180 months, with 60 months directed to run concurrent with Mixson's state sentences. (Tr. at 37).

Mixson did not appeal his conviction or sentence. However, on January 22, 2010, Mixson filed the instant motion to vacate pursuant to 28 U.S.C. § 2255. The government has moved to dismiss the motion, arguing that it is barred by the waiver of collateral attack rights contained in the plea agreement, and that it is without merit. Mixson filed a response to the motion on May 13, 2010. The matter is now ripe for review.

## Discussion

In moving to vacate his conviction and sentence, Mixson claims that the court erred in refusing to permit him to withdraw his guilty plea. Mixson also claims that his attorney provided ineffective assistance by "rushing" him to plead guilty, providing misleading advice regarding

---

[2] The prior felony convictions included multiple convictions for statutory burglary and/or breaking and entering, as well as a conviction for conspiring to distribute methadone.

8

the impact of the presentence report, and terminating her representation "without trying to help [Mixson] work on an appeal." (Def.'s Mot. at 6, 8). For the following reasons, the court concludes that each of Mixson's claims is without merit.[3]

I.   Motion to Withdraw

Mixson first claims that the court erred in denying his motion to withdraw his guilty plea. As the government explains in its motion to dismiss, a defendant has no absolute right to withdraw a guilty plea, even before sentencing. United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). Instead, a defendant bears the burden of demonstrating that "a fair and just reason" supports his request. Fed. R. Crim. P. 11(d). The determination of whether this burden has been met is "entrusted to the discretion of the district court." Moore, 931 F.2d at 248.

In resolving a motion to withdraw a guilty plea, the most important consideration is an evaluation of the Rule 11 hearing at which the guilty plea was accepted. United States v. Bowman, 348 F.3d 408, 414 (4th Cir. 2003). "Thus, when a district court considers the plea withdrawal motion, 'the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary' . . . . A voluntary and intelligent plea of guilty 'is an admission of all the elements of a formal criminal charge,' . . . and constitutes an admission of all 'material facts alleged in the charge.'" Id. (quoting United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993)) (omissions in original). Consequently, "a properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn." Id.

---

[3] Because the court concludes that the defendant's claims are without merit, the court finds it unnecessary to address the government's waiver argument.

When addressing a defendant's motion to withdraw his guilty plea, the court may also consider other circumstantial factors that relate to whether a defendant has advanced a fair and just reason for requesting the withdrawal. Factors identified by the United States Court of Appeals for the Fourth Circuit include: (1) whether the defendant provided credible evidence that his plea was not knowing or voluntary; (2) whether the defendant credibly asserted his legal innocence; (3) whether there was a delay between the entry of the plea and the motion for withdrawal; (4) whether the defendant had close assistance of competent counsel; (5) whether withdrawal would prejudice the government; and (6) whether withdrawal would inconvenience the court and waste judicial resources. Moore, 931 F.2d at 248. The Fourth Circuit has noted that the factors "that speak most straight-forwardly to the question whether the movant has a fair and just reason" to withdraw the plea "are the first, second, and fourth." United States v. Sparks, 67 F.3d 1145, 1154 (4th Cir. 1995). The other factors "are best understood as countervailing considerations that establish how heavily the presumption should weigh in any given case." Id.

Applying the first, second, and fourth factors in this case, it is clear from the record that Mixson's motion to withdraw his guilty plea was properly denied. First and most importantly, the record reveals that the Rule 11 hearing was extensive, and there is no evidence to suggest that Mixson's plea was unintelligent or involuntary. During the Rule 11 hearing, the court established that Mixson possessed the capacity to make an intelligent and informed decision, that he understood the charge to which he was pleading guilty, that he understood potential range of penalties, and that his plea was knowing and voluntary. Mixson stated under oath that he was entering his plea voluntarily; that he understood that he would be subject to a mandatory minimum period of imprisonment of fifteen years if he qualified as an armed career criminal

10

under § 924(e); that he was aware of the constitutional rights that he would be waiving by entering a plea of guilty; and that he was satisfied with his attorney's representation. Mixson's sworn statements at the Rule 11 hearing are presumed to be true, see Blackledge v. Allison, 431 U.S. 63, 73-74 (1977), and he has not identified any infirmity in that hearing. To the contrary, the record demonstrates that the court adequately informed Mixson of his rights and the potential consequences of entering a plea of guilty, that the court thoroughly inquired as to the voluntariness of Mixson's plea, and that the court properly determined that there was a sufficient factual basis for it.

With regard to the second factor, the court concludes that Mixson failed to credibly assert his legal innocence. During the Rule 11 hearing, Mixson stated under oath that he had possessed a firearm after having been convicted of a felony and, thus, that he was, in fact, guilty of the crime charged in the indictment. Mixson's admission was consistent with the summary of the evidence proffered by the government, which indicated that Mixson's brother had taken a shotgun from his roommate and given the gun to Mixson; that one of Mixson's friends had seen Mixson with the gun on multiple occasions; that Mixson had eventually given the gun to William Underwood so that Mixson would not be caught with it; and that, following his arrest, Mixson wrote a letter to his girlfriend in which he specifically stated that the police had obtained the gun that he had received from his brother and given to Underwood. While Mixson subsequently asserted during his sentencing hearing that no one had seen him with the gun, that none of his fingerprints were on it, and that "[t]he shotgun never was in [his] possession," (Tr. at 8), Mixson's assertions of innocence at the sentencing proceeding were "less than credible because he contradicted his own prior statements under oath without offering an explanation for the

change in his version of events," United States v. Hoover, 1994 U.S. App. LEXIS 8432, at *10 (4th Cir. Apr. 22, 1994). Moreover, the evidence proffered by the government at the Rule 11 hearing pointed convincingly to Mixson's guilt of the offense charged, and there is simply no evidence in the record to contradict the facts on which the court relied to accept Mixson's guilty plea.[4] See Bowman, 348 F.3d at 415 (affirming the denial of the defendant's motion to withdraw his guilty plea, where the defendant admitted to his guilt at the Rule 11 hearing and the government presented testimony of witnesses corroborating his guilt); United States v. Dogan, 1998 U.S. App. LEXIS 16312, at *5 (4th Cir. Jul. 15, 1998) (affirming the denial of defendant's motion to withdraw, where the defendant "admitted to his distribution activity at the Rule 11 colloquy, and his claim of innocence [was] contradicted by the testimony of three detectives and two CI's") (citing United States v. Sparks, 67 F.3d 1145, 1151-1153 (4th Cir. 1995)).

Finally, with respect to the fourth factor, the record, including Mixson's representations at the Rule 11 hearing, flatly refutes any suggestion that Mixson did not receive the close assistance of competent counsel. While Mixson alleged in his motion to withdraw his guilty plea that he had been misled by his attorney, this conclusory assertion was insufficient to overcome his sworn statements that he had not been coerced, that he was pleading guilty voluntarily, that he was aware of all of the consequences of his guilty plea, and that he was entirely satisfied with the

---

[4] In his response to the government's motion to dismiss, Mixson merely argues that his brother, Ashley Valentine, should not have been permitted to testify before the grand jury because Valentine "was under the influence of medication and the care of (2) two psychologist[s]." (Pl.'s Resp. at 2). Mixson does not otherwise attempt to rebut the evidence indicating that Valentine had given him a firearm. Indeed, Valentine's testimony in that regard was corroborated by the letter that Mixson wrote after he was arrested, in which he stated that "[t]he cops got the gun I got from Ashley and that I gave to Junior Underwood." (Guilty Plea Tr. at 30).

services provided by his attorney. In these circumstances, the court remains convinced that this factor also weighed in favor of the government. See United States v. Ubakanma, 215 F.3d 421, 425 (4th Cir. 2000) (holding that the fourth Moore factor favored the government, where the defendant's conclusory claims that he was misinformed or pressured into pleading guilty contradicted his sworn statements at the Rule 11 hearing).

For the foregoing reasons, the court concludes that Mixson failed to advance a fair and just reason for withdrawing his guilty plea and, thus, that his motion to withdraw was properly denied.[5] Accordingly, the court will grant the government's motion with respect to this claim.

II.  Claims of Ineffective Assistance

In his remaining claims, Mixson alleges that he received ineffective assistance of counsel, both before he entered his plea of guilty and after he was sentenced. Specifically, Mixson claims that his counsel "rushed" him to plead guilty and provided misleading information regarding the impact of the presentence report. Mixson also claims that his attorney terminated her representation following the sentencing hearing without helping him prepare an appeal.

Claims that counsel provided ineffective assistance are governed by the two-prong test set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance, Mixson must first establish that counsel's performance was "deficient." Strickland, 466 U.S. at 687. The standard for deficient

---

[5] In passing, the court notes that Mixson's motion to withdraw his guilty plea appeared to be based on sentencing concerns. The motion was not filed until long after Mixson's guilty plea was entered, and his arguments for withdrawing his plea primarily reflected his dissatisfaction with the enhanced sentence recommended in the presentence report. It is clear from the record, however, that Mixson was aware from the outset that his prior convictions could result in a mandatory minimum term of imprisonment of fifteen years.

13

performance is an objective one, focusing on "whether counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, Mixson must show that counsel's deficient performance prejudiced his defense. Id. To demonstrate prejudice, Mixson generally "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

      A.      <u>Counsel's Pre-Plea Performance</u>

Having reviewed the record, the court concludes that Mixson's first claim of ineffective assistance fails to satisfy the deficient performance prong of <u>Strickland</u>. Although Mixson alleges in his § 2255 motion that his attorney pressured him to plead guilty and failed to adequately explain the impact of the presentence report, Mixson's allegations in this regard directly contradict the sworn statements that Mixson made during the Rule 11 hearing. As previously summarized, Mixson affirmed during the hearing that no one had attempted to coerce or compel him to enter a plea of guilty, and that he was "considering a plea of guilty based on what [he thought was] best for [him] and what [was] consistent with the facts . . . ." (Plea Hearing Tr. at 11-12). Mixson also affirmed that he and his attorney had discussed "the advisory sentencing guidelines, how they work and what they would mean to [Mixson]"; that he understood that the guidelines would predict an appropriate sentencing range; and that he realized that it would be "very important to determine [his] record and determine whether [he had] three qualifying offenses under Section 924(e)." (Tr. at 15). The court emphasized, on multiple occasions, that Mixson would face a mandatory minimum term of imprisonment of fifteen years if he qualified as an armed career criminal under § 924(e), and Mixson stated, on each occasion, that he understood the impact that his criminal history would have on the potential

range of punishment. At the conclusion of the hearing, Mixson indicated that he did not have any questions about any aspect of his case, and that he was "satisfied with all elements of [his attorney's] services in [the] case." (Tr. at 33).

Mixson has not pointed to any evidence that would undermine his prior statements regarding the voluntariness of his guilty plea or the sufficiency of his attorney's representation. Consequently, Mixson is bound by the representations that he made during the Rule 11 hearing, and his allegations contradicting those representations must be rejected. See Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.") (citing Blackledge, 431 U.S. at 74-75); see also United States v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

  B. <u>Counsel's Post-Conviction Performance</u>

Mixson also claims that his attorney rendered ineffective assistance, in that she "immediately upon conviction . . . terminated [him] as a client without trying to help [him] work on an appeal." (Def.'s Mot. at 8). To support this claim, Mixson cites to the first page of the docket sheet in his criminal case, which indicates that his attorney was terminated from the case on June 19, 2009, the same date on which Mixson was sentenced.

In response to this claim, the government filed an affidavit from Mixson's attorney. The affidavit states, in pertinent part, as follows:

> Mr. Mixson asserts that I immediately terminated him as a client without ever assisting him in an appeal of the court's ruling, citing . . . the first page of the U.S. District Court docket report as proof of such. True, the docket sheet lists me as terminated from Mr. Mixson's case as of June 19, 2009. Although I did not actively terminate myself, the court probably did so because that was the date of the Judgment in Mr. Mixson's case, and Mr. Mixson had waived both his rights of appeal and collateral attack in his plea agreement.
>
> I received a letter from Mr. Mixson on June 26, 2009 . . . . In it, he asked for "a copy of his court order and a copy of his sentencing order." He informed me that he was at the Western Virginia Regional Jail and asked me to visit him there, because he had "a few questions." As my note at the bottom of the letter indicates, on July 1, 2009, I visited Mr. Mixson at the Western Virginia Regional Jail, along with John Greco, the investigator from my office . . . . We did discuss the possibility of appealing his case. As Mr. Mixson received a considerable reduction in his sentence, I am certain that we discussed how appealing his sentence could jeopardize that reduction. I saw no advantage to noting an appeal and so advised Mr. Mixson. Certainly, if Mr. Mixson had instructed me to file a notice of appeal in his case I would have done so. He did not instruct me to note an appeal – then nor at any other time.

(Govt.'s Ex. 4).

Following the filing of the government's motion to dismiss, the court issued a Roseboro[6] notice that advised Mixson of his right to file counter-affidavits or other relevant materials contradicting the government's evidence. Although Mixson filed an additional pleading within the time frame allotted, the pleading did not address Mixson's claim that his attorney failed to assist him in filing an appeal, or otherwise rebut his attorney's affidavit with respect to that claim.

In Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000), the United States Supreme Court held that the test for ineffective assistance set forth in Strickland, supra, applies to claims that counsel

---

[6] See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

was ineffective for failing to file an appeal. The Supreme Court explained that in those cases where a defendant does not specifically instruct his attorney to file an appeal, the question of whether counsel's failure to appeal is constitutionally deficient depends upon "whether counsel in fact consulted with the defendant about an appeal." Roe, 528 U.S. at 478. The Court defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. If, on the other hand, counsel has failed to consult, the court must consider whether this failure constitutes deficient performance. Id.

In this case, while Mixson claims that his attorney should have helped him file an appeal, he does not allege that he specifically requested her assistance or that he gave any indication that he was interested in appealing. Moreover, Mixson has failed to rebut the affidavit from his attorney which indicates that she indeed consulted with him about an appeal. The affidavit unequivocally states that she met with Mixson after the sentencing hearing, that they discussed the possibility of appealing his case, that she advised him of the relevant disadvantages, and that Mixson never instructed her to file a notice of appeal on his behalf. In the absence of any countervailing evidence, the court concludes that Mixson has failed to allege facts that support the notion that his attorney's performance was constitutionally deficient under Roe and, thus, that this claim is also subject to dismissal.[7]

---

[7] To the extent that Mixson takes issue with the termination date listed on the docket sheet in his criminal case, the court notes that the date was automatically entered by the Clerk's Office, not by Mixson's attorney.

## Conclusion

For the reasons stated, the court will grant the government's motion and deny the defendant's motion. Additionally, because the defendant has failed to demonstrate "a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this opinion and the accompanying order to the defendant and all counsel of record.

ENTER: This 21st day of June, 2010.

/s/ Glen Conrad
United States District Judge